UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RANDY BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-6042 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| RANDY PFISTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION AND ORDER

Plaintiff Randy Brown, an inmate at Stateville Correctional Facility, needs medicinal eye drops to treat his glaucoma. He takes the eye drops twice a day to reduce pressure in his eyes, and without the treatment, he could go blind. But the prison staff repeatedly confiscates his eye drops during shakedowns of the prison, and fails to return or replace them. Time and again, Brown has complained about the confiscation of his eye drops, but the situation has not improved.

Brown eventually sued two wardens, two correctional officers, a doctor, and the company that provides health services at the prison. Brown brought six claims under section 1983, alleging that Defendants had violated the prohibition against cruel and unusual punishment under the Eighth Amendment. He claims that Defendants showed deliberate indifference to his serious medical condition, putting him at risk of blindness.

The wardens and the correctional officers moved to dismiss. They argue that Brown received replacement pills for his glaucoma, so he didn't lack medical care. They also contend that they had no personal involvement in the medical decisions. Finally, they argue that Brown

cannot recover damages on his official capacity claims, and cannot obtain the requested injunction against the two correctional officers.

The motion is granted in part and denied in part. The Court dismisses the individual capacity claims against Warden Miles, but denies the motion to dismiss the individual capacity claims against the remaining Defendants. The Court dismisses the demand for monetary damages on the official capacity claims, but denies the motion to dismiss the request for an injunction.

## Background

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Plaintiff Randy Brown has glaucoma, a chronic disease that increases the pressure in the eyes. *See* Third Am. Cplt. ¶ 12 (Dckt. No. 75). He treats his glaucoma by taking medicinal eye drops. *Id.* at ¶¶ 12, 16. Doctors prescribed three medications: Latanaprost, Dorzolamide, and Timolol. *Id.* at ¶ 12. The eye drops are effective for only 12 hours per dose, so he needs to take them twice a day. *Id.* at ¶ 16.

Regular treatment is important. Without eye drops, Brown suffers from severe eye pain, blurry vision, and headaches. *Id.* at ¶ 12. Inconsistent use of the eye drops can lead to increased pressure, which can damage the eyes. *Id.* at ¶¶ 12, 16. He could go blind without them. *Id.* at ¶ 12.

Brown has missed many doses over the years because he simply didn't have access to the medicine. Brown is incarcerated at Stateville Correctional Center, and he says that correctional

officers have confiscated his eye drops during "shakedowns" ever since he became an inmate in 2010.  *Id.* at ¶ 13.

For example, prison staff "conducted a shakedown of the Stateville compound" in November 2017.  *Id.* at ¶ 18.  The officers took all inmates to the dining hall while the tactical team dismantled their cells.  *Id.*  The team took Brown's eye drops, along with other personal items.  *Id.*

Time and again, Brown filed grievances about the confiscated medicine and requested emergency refills.  *Id.* at ¶ 17.  Specifically, he filed grievances on April 27, 2014, November 26, 2014, January 8, 2015, August 3, 2015, August 16, 2015, January 13, 2016, January 17, 2016, May 7, 2016, January 15, 2017, January 24, 2017, November 14, 2017, November 17, 2017, and August 8, 2019.[1]  *Id.*  The shakedown-confiscation cycle has continued even after Brown filed this action in 2018.  During an August 2019 shakedown, officers took his eye drops yet again.  *Id.* at ¶ 31.

After the shakedowns, Brown asked the prison staff to return or replace the eye drops.  *Id.* at ¶¶ 19–26.  For example, after the shakedown on November 14, 2017, Brown "alerted Stateville staff" – including Defendant Bradley Jenkins, a Stateville correctional lieutenant – that the tactical team had confiscated his eye drops, and he asked for their return.  *Id.* at ¶ 19.  Stateville staff refused.  *Id.*

Brown also "explained the urgency of the situation" to Defendant Andrew Fox, another correctional lieutenant, on the night of the November 14 shakedown.  *Id.* at ¶ 20.  He asked Fox to intervene because "without his eye drops, the pressure build up could cause permanent blindness and other painful symptoms."  *Id.*  Fox refused to lend a hand.  *Id.*

---

[1]  Brown filed the grievances in response to the motion to dismiss.  *See* Dckt. No. 83-1.

3

That night, Brown filled out an emergency refill request form for his eye drops. *Id.* at ¶ 21. Brown gave the form to the medical staff, who in turn sent it to Stateville's medical director (Defendant Saleh Obaisi) for approval. *Id.* at ¶¶ 21–22. Two days passed, with no response. *Id.* at ¶ 23.

When he didn't hear back, he filled out another emergency refill request form and an "emergency grievance to Defendant PFISTER, in order to obtain his eye drops." *Id.* at ¶ 23. Still no answer. So on November 17, he filed another emergency grievance with Defendant Pfister. *Id.* at ¶ 24. The result? A denial because "an emergency is not substantiated." *Id.* at ¶ 25.

That example was par for the course. All too often, Brown spent days, weeks, and even months without his prescribed eye drops. *Id.* at ¶¶ 15, 27. Brown admits that he did have access to glaucoma medication "in pill form" for at least some of the time – "from 2011 through 2015." *Id.* at ¶ 14. But Brown was allergic to the pills, and he suffered "allergic reactions" including "skin rashes and other side effects." *Id.* at ¶ 15. So Brown apparently stopped taking (or perhaps stopped receiving – the complaint does not say) the pills in 2015.

His condition worsened without the eye drops. He suffered a "severe build-up of pressure" in both eyes, and he eventually needed surgery. *See* Third Am. Cplt. ¶ 16. He had surgery on one eye in July 2017, and had surgery on the other eye in September 2017. *Id.* Doctors prescribed that Brown take the eye drops "twice daily, every day, for the rest of his life." *Id.* But even after his surgeries, officers continued to confiscate his prescription eye drops. *Id.* at ¶¶ 18, 31.

The complaint alleges that Brown suffered "tremendous pain and suffering" from the loss of his eye drops. *Id.* at ¶ 32. The lack of access to the medicine has exacerbated his glaucoma, and increased the risk of long-term damage. *Id.*

Brown eventually sued under section 1983, alleging that Defendants had violated his Eighth Amendment right to be free from cruel and unusual punishment by showing deliberate indifference to his serious medical needs. The third amended complaint advances six counts of deliberate indifference, each against a different Defendant, in the following order: (1) Stateville Warden Randy Pfister; (2) Stateville correctional lieutenant Bradley Jenkins; (3) Stateville correctional lieutenant Andrew Fox; (4) Ghaliah Obaisi as the Independent Executor of the late Dr. Saleh Obaisi's estate; (5) former Stateville Warden Sherwin Miles; and (6) Wexford Health Sources, Inc., a private firm that provides medical care to inmates at Stateville. *See* Third Am. Cplt., Counts I–VI (Dckt. No. 75, at 9–16).

Four of the Defendants – the warden, former warden, and the two correctional lieutenants (hereinafter, "Defendants") – moved to dismiss for failure to state a claim. *See* Mtn. to Dismiss (Dckt. No. 78).

**Analysis**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Defendants move to dismiss the Eighth Amendment claims on two grounds. First, they argue that the complaint fails to state a claim of deliberate indifference because Brown admits that he received pills to treat his glaucoma. So, even if the prison confiscated his eye drops, Brown still received medical care. Second, they argue that they were not personally involved in Brown's medical care.

In addition, Defendants challenge the requested remedies. They argue that an official capacity claim cannot give rise to monetary damages. Two of the Defendants also challenge the request for an injunction because they lack policymaking authority.

## I.  Individual Capacity Claims

An inmate has a right to be free from cruel and unusual punishment under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 101–02 (1976). "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (cleaned up); *see also Daniel v. Cook County*, 833 F.3d 728, 733 (7th Cir. 2016); *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012).

To find a prison official liable under the Eighth Amendment, a plaintiff "must satisfy both an objective and a subjective element." *King*, 680 F.3d at 1018; *Farmer*, 511 U.S. at 834. First, the alleged deprivation must be "sufficiently serious." *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Second, the prison official must have a "'sufficiently culpable state of mind.'" *See Farmer*, 511 U.S. at 834 (citation omitted). In prison-condition cases, a plaintiff can establish the requisite state of mind by showing "deliberate indifference" to inmate health or safety. *Id.* (citations omitted).

6

Defendants don't challenge the first requirement – that Brown's glaucoma was "sufficiently serious" under the objective standard. *See* Mtn. to Dismiss, at 3–5 (Dckt. No. 78). A condition is sufficiently serious if "'a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson.'" *See Lockett v. Bonson*, 937 F.3d 1016, 1022–23 (7th Cir. 2019) (citation omitted); *McDonald v. Hardy*, 821 F.3d 882, 889 (7th Cir. 2016). Glaucoma is "manifestly a sufficiently serious medical condition to satisfy the objective element of the deliberate indifference standard," given that the disease "causes blindness" and "its progression . . . is marked by severe migraine headaches." *O'Banner v. Bizzell*, 1998 WL 466824, at *2 (7th Cir. 1998); *Smith v. Wexford Health Source, Inc.*, 2016 WL 7116586, at *2 (N.D. Ill. 2016) (collecting cases holding that severe eyesight problems, including glaucoma, qualify as serious medical conditions).

The question is whether Brown has adequately alleged the second, subjective requirement: that Defendants showed deliberate indifference with a "'sufficiently culpable state of mind.'" *See Farmer*, 511 U.S. at 834 (citations omitted). Defendants make two arguments. First, they argue that Brown received other medicine for his glaucoma (in the form of pills), so the prison staff was not deliberately indifferent to his needs. Second, Defendants contend that they had nothing to do Brown's medical care, so they couldn't have a "sufficiently culpable state of mind." *Id.*

### A. Adequate Care

Defendants argue that the complaint fails to state a claim because Brown admits that he received other medicine for his glaucoma. In their view, Defendants were not deliberately indifferent to his medical condition because Brown received medicine for his medical condition.

The complaint alleges that Brown received pills instead of eye drops for his glaucoma, at least for a while. "Initially, instead of receiving his eye drops, Mr. BROWN would receive

7

'replacement medications' that were in pill form." *See* Third Am. Cplt. ¶ 14. He received the pills "[f]rom 2011 through 2015." *Id.* at ¶ 15. As Defendants see it, Brown admitted that he received medicine for his eye problems, so he can't state a claim for deliberate indifference. *See* Mtn. to Dismiss, at 3–5 (Dckt. No. 78). The confiscation of one form of medicine (eye drops) was no big deal because he received other medicine (pills) in their place.

Defendants concede that "Plaintiff would have preferred to receive his medication in eye drop form rather than in pill form because the pills resulted in 'skin rashes and other side effects.'" *Id.* at 4 (quoting Third Am. Cplt. ¶ 15). But according to Defendants, treatment is treatment, side effects or not. *See id.* ("Prisoners are 'not entitled to demand specific care.'") (quoting *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997)). And Brown can't use a section 1983 suit to "challenge an issue of medical judgment" by Stateville health staff to provide pills instead of eye drops. *Id.* at 3–4 (citing *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991)).

Defendants' argument doesn't hold up. Not all medicine is created equal, and it depends largely on the patient. Here, Brown alleged that the pills caused allergic reactions. "From 2011 through 2015, these pills caused Mr. BROWN to suffer allergic reactions that led to a skin rashes [sic] and other side effects. Critically, Mr. BROWN was forced to endure months at a time without his medically prescribed eye drops."[2] *See* Third Am. Cplt. ¶ 15.

Doctors can show deliberate indifference by prescribing medication that they know will cause a severe allergic reaction, especially if there is a better alternative. *See Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974) (holding that intentionally administering penicillin to inmate

---

[2] That allegation is enough to state a claim. The emergency grievance contains additional details. He apparently broke out in rashes all over his body, including on his ears, lips, and the insides of his thighs. 1/8/15 Emergency Grievance (Dckt. No. 83-1, at 49–50 of 84). The rashes left scars. *Id.*

8

with a known penicillin allergy states a claim for deliberate indifference), *vacated on other grounds sub nom. Cannon v. Thomas*, 419 U.S. 813 (1974); *see also Adams v. Durai*, 153 F. App'x. 972, 975 (7th Cir. 2005) (holding that plaintiff stated a deliberate indifference claim by alleging that the treating doctor "administered an unapproved drug that caused potentially serious side effects and then later discontinued his FDA-approved medications altogether").

True, doctors do not show deliberate indifference merely by prescribing medication that turns out to cause side effects. *See, e.g.*, *Juarez v. Walter*, 724 F. App'x. 487, 488–89 (7th Cir. 2018) (holding that doctor and nurse did not show deliberate indifference in prescribing medication with side effect of dizziness that caused fall and injury); *Brown v. Felten*, 721 F. App'x. 538, 540 (7th Cir. 2018) (rejecting deliberate indifference claim based on side effects absent any showing that side effects "were an excessive risk of the drug"); *Campbell v. Lane*, 1992 WL 58959, at *1 (7th Cir. 1992) (rejecting deliberate indifference claim based on side effects absent allegations that doctor knew that medication would harm the inmate). But the Seventh Circuit has held that intentionally prescribing medication that is known to cause serious side effects can constitute deliberate indifference. *See Thomas*, 493 F.2d at 158; *Adams*, 153 F. App'x. at 975.

The complaint does not squarely allege that the doctors knew in advance that the pills would cause an allergic reaction. And the complaint does not address what the wardens and the correctional officers – the movants here – knew about the pills. The complaint does not expressly allege that they knew about the allergic reactions at all.

But the Court must read the complaint in Brown's favor. And it is a reasonable inference that Brown notified the prison staff about his allergic reactions. Given the number of complaints that Brown made about the loss of the pills – the complaint identifies more than a dozen

9

grievances – it is a fair inference that Brown complained about the allergic reactions, too. Maybe the facts will pan out differently, but for now, the complaint alleges enough about an allergic reaction to state a claim.

What's more, Defendants cannot rely on the notion that prescribing the pills was simply a question of medical judgment. The complaint itself does not allege that the doctors exercised medical judgment when prescribing pills instead of eye drops. Brown doesn't describe a medical visit in which a doctor specifically prescribed the pills. And he doesn't allege that Stateville medical staff considered the side effects and decided to prescribe pills anyway.

Maybe that's what happened. But that's not in the complaint. And at this early stage, the complaint is what matters.[3] At the motion to dismiss stage, this Court must take all of Brown's facts as true and draw all reasonable inferences in his favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). Defendants simply assume that prescribing pills instead of eye drops was a question of medical judgment. But the inferences flow in Brown's favor, not the other way around.

Even then, the complaint does not allege that Brown always received replacement pills for his glaucoma. It alleges that he received them "[i]nitially," from "2011 through 2015." *See* Third Am. Cplt. ¶¶ 14–15 (Dckt. No. 75). The use of the word "[i]nitially" suggests that Brown stopped receiving pills at some point. *Id.* at ¶ 14. So does the date range of "2011 through 2015." *Id.* at ¶ 15. Brown alleges that he complained about the confiscation of his eye drops in 2016, 2017, and 2019. *Id.* at ¶ 17. Read as a whole, the complaint alleges that he received replacement pills some of the time, but not all of the time.

---

[3] The Court relies on the allegations of the complaint itself. Still, one of the grievances claims that no one screened him for possible side effects. *See* 11/26/14 Grievance (Dckt. No. 83-1, at 55–56, of 84).

Overall, the fact that Brown received pills does not foreclose a claim that he suffered an injury from the loss of his eye drops.

### B. Personal Involvement

Defendants argue that they cannot be held responsible because they were not involved in Brown's medical care. So even if Brown received constitutionally deficient care, Defendants aren't to blame. *See* Mtn. to Dismiss, at 5–13 (Dckt. No. 78).

Officials face no individual liability under section 1983 unless they were personally involved in depriving a plaintiff of his constitutional rights. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) (citations omitted); *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) ("For constitutional violations under § 1983 or *Bivens*, a government official 'is only liable for his or her own misconduct.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996). To recover damages against an official in a supervisory role, a plaintiff "may not rely on a theory of respondeat superior and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *See Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citation omitted); *see also Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009) ("The assumption underlying this choice of defendants – that anyone who knew or should have known of his eye condition, and everyone higher up the bureaucratic chain, must be liable – is a bad one.").

Sitting atop the chain of command is not enough to draw an official within the scope of liability. But a managerial or policy post isn't a firewall against liability, either.

An administrator or official may find out about a constitutional violation so grave that it demands action. "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez*, 792 F.3d at 781 (quoting *Vance v. Peters*, 97 F.3d 987, 993–94 (7th Cir. 1996)). "An

11

inmate's correspondence to a prison administrator may thus establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Id.* at 781–82; *Vance*, 97 F.3d at 993. But the communication must give the official "sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Vance*, 97 F.3d at 993 (quoting *Farmer*, 511 U.S. at 837).

Only a substantial health risk counts. Senior officials cannot "realistically be expected to be personally involved in resolving a situation pertaining to a particular inmate unless it were of the gravest nature." *See Antonelli*, 81 F.3d at 1428–29. And the official must "realize[]" that a substantial risk of harm to the prisoner exists, "but disregard[] it." *Perez*, 792 F.3d at 781. "Once an official is alerted of such a risk," the refusal to act might give rise to a claim. *See Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011); *Perez*, 792 F.3d at 782 (noting that an official who is not "directly responsible for the constitutional deprivation" may nevertheless be held personally responsible where the prisoner sent "many letters" to the official, who "systematically ignored these requests for redress") (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

If Defendants knew about the confiscation of essential medicine, then it is plausible that they acted with deliberate indifference by failing to ensure that Brown received his eye drops. *See Delaney v. DeTella*, 256 F.3d 679, 686 (7th Cir. 2001) ("Here, [plaintiff] alleges that he repeatedly complained to each of the named defendants, filed a grievance, and requested medical attention frequently because he could not exercise outside his cell. In spite of these repeated requests and their knowledge of the potential risk, [plaintiff] claims the defendants did nothing. This inaction satisfies the subjective element of an Eighth Amendment claim.").

The question is whether the complaint adequately alleges that each of the Defendants was "alerted" to the fact that Brown was deprived of essential medicine. *See Arnett*, 658 F.3d at 755.

### 1. The Wardens (Pfister and Miles)

The complaint alleges individual capacity claims against two wardens: Pfister and Miles. *See* Third Am. Cplt. ¶¶ 5, 9 (Dckt. No. 75). The complaint alleges that Pfister "was the warden of Stateville during all relevant times." *Id.* at ¶ 5. Miles was the warden when Brown filed the complaint. *Id.* at ¶ 9. But since then, Pfister has returned as the warden. *See* Mtn. to Dismiss, at 2 (Dckt. No. 78).

The complaint does not state a claim against Warden Miles. The complaint alleges virtually no facts about Miles. Only three paragraphs of the complaint mention Miles at all. Brown alleges that Miles is the "acting warden of Stateville." *See* Third Am. Cplt. ¶ 9. The other two paragraphs contain conclusory statements about deliberate indifference, without including any real-world facts. *Id.* at ¶¶ 55, 57. The lack of detail is not surprising, because Pfister, not Miles, was the warden "during all relevant times." *Id.* at ¶ 5. Alleging that Miles was the acting warden is not enough to state a claim that she was personally involved in constitutional deprivations. The individual capacity claims against Miles are dismissed.

It's a different story with Defendant Pfister. The complaint alleges that Brown filed grievances more than a dozen times, and it includes specific dates. *Id.* at ¶ 17. Brown also claims that he submitted at least two emergency grievances to Pfister about the confiscation of his eye drops. *Id.* at ¶¶ 23–24 (describing two emergency grievances "to Defendant PFISTER" after the November 14, 2017 shakedown).

Based on the complaint itself, it is not entirely clear that Pfister personally knew about all of the grievances. But the complaint does allege that Brown directed two of the emergency

13

grievances to Pfister, and that is enough to put him on notice. Also, it is a plausible (but not necessary) inference that Pfister knew about the other grievances, too.

Yet Pfister apparently did nothing. The emergency grievances in November 2017 were denied. *See* Third Am. Cplt. ¶ 25 ("Both grievances were returned to Mr. BROWN, rejecting his requests for his medical eye drops and plainly asserting that 'an emergency is not substantiated.'"). On that occasion, Brown went a week without any glaucoma medicine. *Id.* at ¶ 27.

The complaint alleges that Brown put Pfister on notice that he had a serious medical condition, but Pfister took no action. Viewed as a whole, the complaint sufficiently alleges deliberate indifference against Pfister in his individual capacity. Maybe the facts will show that Pfister didn't know about Brown's medical condition before November 2017. But that is a question for a later day.

### 2. The Correctional Lieutenants (Jenkins and Fox)

Brown also alleges enough to state a deliberate indifference claim against correctional lieutenants Jenkins and Fox.

Most of the references to Jenkins and Fox in the complaint are conclusory. They appear primarily in the Counts themselves, meaning Count II (Jenkins) and Count III (Fox). They read like boilerplate, not a description of real-world facts.

The main body of the complaint, the "Statement of Facts," includes only a few references to Jenkins and Fox. But it does include two paragraphs about an incident on November 14, 2017. Brown asked each lieutenant to help him recover his eye drops after the shakedown, or at least get them refilled. *See* Third Am. Cplt. ¶¶ 19–20 (Dckt. No. 75). Brown "explained the urgency of the situation" to Fox. *Id.* at ¶ 20. The complaint is less specific about Jenkins, but it does allege that Brown "requested his eye drops be returned." *Id.* at ¶ 19. Read in a light

favorable to Brown, and reading paragraphs 19 and 20 together, the complaint plausibly alleges that Brown put Jenkins and Fox on notice of his serious medical needs.

The complaint is more specific about how they responded. Jenkins and Fox "refused" to help. *Id.* at ¶¶ 19–20. Read as a whole, the complaint alleges that Brown put Jenkins and Fox on notice about his serious medical needs, and they refused his calls for help. That is enough to allege individual capacity claims for deliberate indifference. Again, maybe the facts will show that Jenkins and Fox had no knowledge about other incidents, or about Brown's medical needs more generally. But for now, the claims survive.

## II. Official Capacity Claims

Brown also alleges official capacity claims against Warden Miles, Lt. Jenkins, and Lt. Fox. *See* Third Am. Cplt. ¶¶ 6–7, 9. Brown did not advance an official capacity claim against Warden Pfister, apparently because he "was" the warden (past tense) but no longer *is* the warden. *Id.* at ¶ 5. The complaint alleges that Miles "is" the warden. *Id.* at ¶ 9.

But Miles has stepped down, and Pfister has reassumed the role of warden. Under the Federal Rules, Pfister is automatically substituted for Miles as an official capacity defendant. *See* Fed. R. Civ. P. 25(d); *Franklin v. Zaruba*, 150 F.3d 682, 684 n.1 (7th Cir. 1998). So, the complaint alleges official capacity claims against Defendants Pfister, Jenkins, and Fox. The official capacity claim against Miles is dismissed.

Defendants make two arguments. First, they argue that the official capacity claims cannot give rise to monetary damages. Second, they argue that Jenkins and Fox are not in a position to grant Brown's requests for injunctive relief.

### A. Monetary Relief

Defendants are correct that all official capacity claims for monetary relief must be dismissed. Section 1983 does not allow suits for damages against state officials in their official

15

capacities. A suit against a state official in his official capacity is a suit against the state, and a state is not a "person" who may be liable for money damages under section 1983. *See* 42 U.S.C. § 1983; *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 71 (1989); *Phillips v. Illinois Dep't of Fin. and Prof'l Regulation*, 718 F. Appx. 433, 434–35 (7th Cir. 2018); *Kolton v. Frerichs*, 869 F.3d 532, 535–36 (7th Cir. 2017). The text of section 1983 authorizes suit against a "person," not a state, and thus prevents Plaintiff from seeking monetary damages for official capacity claims (above and beyond constitutional considerations under the Eleventh Amendment). *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974) ("[A]n unconsenting State is immune from suits brought in federal courts by her own citizens . . . ."); *see also Arizonans for Official English v. Arizona,* 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under [Section] 1983.").

In his response brief, Brown does not present any argument why he can recover monetary damages under his official capacity claims. *See* Pl.'s Opp. (Dckt. No. 83). The request for monetary relief on the official capacity claims is therefore dismissed with prejudice.

      **B.**     **Injunctive Relief**

Brown also requests "injunctive relief to stop the unconstitutional policy." *See* Third Am. Cplt., Prayer for Relief, at ¶ 5 (Dckt. No. 75, at 16). Defendants Jenkins and Fox move to dismiss the demand for injunctive relief on the official capacity claims. They argue that they have "no ability to change IDOC or Stateville policies." *See* Mtn. to Dismiss, at 14–15 (Dckt. No. 78).

The argument fails for three simple reasons. First, Defendants rely on facts outside the four corners of the complaint. *See* Fed. R. Civ. P. 12(d); *Burk v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) ("In general, a court may only consider the plaintiff's

complaint when ruling on a Rule 12(b)(6) motion."). What matters on a motion to dismiss is the content of the complaint, and the complaint never alleges that Jenkins and Fox are powerless.

Second, the argument spans only two paragraphs, and Defendants cite no case law about the Court's ability to issue an injunction when a defendant lacks policymaking authority. The argument is too cursory for a ruling. *See Lee v. Chicago Youth Centers*, 69 F. Supp. 3d 885, 889 (N.D. Ill. 2014) (noting that "Seventh Circuit precedent . . . consistently holds that undeveloped, unsupported, perfunctory, or skeletal arguments in briefs are waived").

Third, maybe Jenkins and Fox can't *change* the policy. But based on the complaint, it appears that they have some power to *enforce* the policy. And that's what Plaintiff seeks – an injunction to "stop the unconstitutional policy." *See* Third Am. Cplt., Prayer for Relief, at ¶ 5 (Dckt. No. 75, at 16).

## Conclusion

The motion is granted in part and denied in part. The motion to dismiss the individual capacity claims against Defendants Pfister, Jenkins, and Fox is denied. The motion to dismiss the claim against Defendant Miles is granted. Defendant Miles is dismissed. The motion to dismiss the demand for damages on the official capacity claims is granted. The motion to dismiss the request for an injunction is denied.

Date: November 2, 2020

Steven C. Seeger
United States District Judge